[Cite as *State v. Harris*, 2024-Ohio-4722.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No.  L-23-1258

      Appellee                                        Trial Court No.  CR0202302108

v.

Randell Harris                                        **DECISION AND JUDGMENT**

      Appellant                                       Decided:  September 27, 2024

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Randy L. Meyer, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** Following a jury trial, defendant-appellant, Randell Harris, appeals the

November 3, 2023 judgment of the Lucas County Court of Common Pleas, convicting

him of improperly handling a firearm in a motor vehicle and having weapons while under

disability, and sentencing him to 36 months in prison.  For the following reasons, we

affirm the trial court judgment.

# I. Background

{¶ 2} Randell Harris was charged in Lucas County case No. CR202302108 with improperly handling a firearm in a motor vehicle, a violation of R.C. 2923.16(B) and (I) and 2923.111, a fourth-degree felony; and having weapons while under disability, a violation of R.C. 2923.13(A)(2) and (B), a third-degree felony. He was charged in Lucas County case No. CR202302130 with aggravated robbery, a violation of R.C. 2911.01(A)(1) and (C), a first-degree felony, along with a three-year gun specification under R.C. 2941.145(A). The cases were tried together to a jury beginning October 16, 2023. The State presented testimony from the alleged victim of the aggravated robbery, M.C.; Toledo Police Officers Kyle Rogalski, Angela Domschot, Simon Urbina, and Anne Knoblauch; and Detective Larry Lambert. M.C.'s 9-1-1 call was admitted into evidence, as was footage from body cameras worn by Officers Rogalski, Domschot, and Urbina.

{¶ 3} According to the evidence presented at trial, Harris was M.C.'s niece's boyfriend. M.C.'s niece, Harris, and their children were temporarily living with M.C.'s sister. On July 9, 2023, M.C. drove by her sister's home after dropping her daughter off at a nearby barber shop. She saw that Harris "was raging." M.C. pulled into the driveway and called her sister on her cell phone to make sure she was okay. Harris approached M.C.'s vehicle on the passenger side and tried to open the door, then moved around to the driver's side. He grabbed M.C.'s phone from her hand through the partially-opened window, pointed a gun at her three times, and said "I should pop your ass."

2.

{¶ 4} M.C. called 9-1-1 with a second phone. Harris left the residence in a black Monte Carlo with his two small children, who were approximately two years old and four or five months old. M.C. followed him briefly, but pulled over to meet with the police. She had a tracker on her stolen phone and later located it in an alley off Lagrange Street. Police did not apprehend Harris that day.

{¶ 5} On July 14, 2023, Toledo police officers spotted the black Monte Carlo—which was registered to the mother of Harris's children—and initiated a stop of the vehicle. Again, Harris was in the vehicle with his young children. Officers verified that there was a warrant for Harris's arrest relating to the July 9, 2023 incident, and advised Harris that he was being arrested. Harris did not understand why he was being detained and became agitated and uncooperative. He refused to get out of the vehicle. The baby was crying, so one of the officers asked him to hold the baby and console it. He held the baby but remained seated in the driver's seat, still refusing to exit the vehicle. Additional crews arrived to assist.

{¶ 6} As the encounter continued, Harris became increasingly hostile and warned officers "we about to rumble." Officers repeatedly ordered Harris out of the vehicle, but Harris told them that they would have to shoot him, and goaded them several times, saying "kill me, kill me." He recorded the interaction and had his girlfriend on speaker phone. Two officers who were on the passenger side of the vehicle saw Harris twice reach into the back seat. The first time, he picked up a bag, but dropped it behind the center console, moving it closer to him. The officers yelled at him to stop reaching. Harris said he was looking for a bottle for his child. The second time Harris reached for

3.

the bag, Officer Knoblauch decided it was time to end the stand-off. She grabbed the toddler out of the car. Officers then forcibly removed Harris from the vehicle. They handcuffed him and placed him in a patrol car.

{¶ 7} Officer Angela Domschot performed an inventory search of the vehicle after the arrest. She searched the diaper bag that had been behind the passenger seat. She testified that she was not expecting to find any contraband, however, in a zippered pocket in the diaper bag was a black .380 Smith and Wesson gun with a magazine in it. There were empty baby bottles scattered throughout the vehicle, but no baby bottle in the diaper bag.

{¶ 8} The gun was tested and found to be operable. It was not dusted for fingerprints or tested for DNA. Detective Lambert testified that to his knowledge, ownership of the gun had never been in question.

{¶ 9} Harris moved for acquittal under Crim.R. 29. The court denied his motion.

{¶ 10} The jury acquitted Harris of aggravated robbery, but convicted him of improperly handling firearms in a motor vehicle and having weapons while under disability. The offenses merged for purposes of sentencing, and the State elected to have Harris sentenced for having weapons while under disability. The trial court imposed a prison term of 36 months. Harris appealed. He assigns the following errors for our review:

> I.   THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING THE DEFENSE MOTION FOR ACQUITTAL PURSUANT TO CRIM. R. 29.

4.

II.    APPELLANT'S CONVICTION FOR HAVING WEAPONS WHILE UNDER DISABILITY WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

## II.  Law and Analysis

{¶ 11} Harris challenges both the sufficiency and weight of his convictions.  He argues that the trial court erred when it denied his motion for acquittal and his conviction for having weapons while under disability was against the manifest weight of the evidence.

## A.  Motion for Acquittal

{¶ 12} First, Harris argues that his motion for acquittal should have been granted because there was not sufficient evidence that he knowingly had a firearm in the vehicle that was accessible for his use.  He argues that the car belonged to the mother of his children, he merely reached in the diaper bag for a baby bottle, but could not obtain one because the officers began screaming at him, ownership of both the gun and the diaper bag were never established, and there was no testimony explaining the custodial arrangement between the parents and how frequently he was in the car with the children.  He maintains that the gun was in a zippered pocket, which would have required two hands to access.  Harris insists that the evidence proved only that he "was driving a car owned by someone else, which was full of baby bottles and other items intended for the care of the children while in the car"; "it was perfectly reasonable for the father of the children to expect to find a baby bottle in a diaper bag when his child needed one"; his "reaching for the diaper bag was evidence of his attempt to feed his child, not of reaching for a weapon"; "there was no evidence that he owned the gun, or that he owned the diaper

5.

bag, or that he knew how the gun got into the diaper bag"; and the gun "was not 'conveniently accessible and within his immediate physical reach.'"

{¶ 13} The State responds that (1) ownership is not a required element of having weapons while under disability; (2) Harris had actual possession of the gun; (3) the State was permitted to meet its burden by proving constructive possession; (4) the State was not required to prove possession by direct evidence; and (5) the State met its burden of production on the offense of the improper handling of a firearm because knowledge and accessibility can be inferred from the circumstances.

{¶ 14} A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 15} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 2016-Ohio-6.

8448, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

**{¶ 16}** Harris does not clearly differentiate which of his arguments apply to which convictions. There is some overlap in the elements of the two offenses. Because of the overlap, we will address both offenses together.

**{¶ 17}** Under R.C. 2923.16(B), "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." Under R.C. 2923.13(A)(2), "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if . . . [t]he person is under indictment for or has been convicted of any felony offense of violence . . . ."

**{¶ 18}** It is undisputed that there was a loaded handgun in the passenger compartment of the vehicle that Harris was driving and that Harris was not legally permitted to have a gun. He argues, however, that the State failed to present evidence (1) that he owned the firearm, diaper bag, or vehicle, (2) that the gun was accessible to him, (3) that the firearm was in his possession, and (4) that he "knowingly" had the firearm. He also suggests that the State was required to present direct—not circumstantial— evidence of each element.

**{¶ 19}** As the State points out, neither statute required the State to prove that Harris owned the gun, the diaper bag, or the vehicle. Ohio courts recognize that the State need not present evidence that the defendant owned the gun as long as it was in his actual

7.

or constructive possession. *See, e.g., State v. Thompson,* 2024-Ohio-2112, ¶ 44 (12th Dist.), citing *State v. Brooks*, 2007-Ohio-506, ¶ 23 (9th Dist.) ("Ownership of the weapon, however, "'need not be proven to establish constructive possession.'"). They recognize that where contraband is found in a bag or backpack, the State need not prove that the defendant owned the bag or backpack. *See, e.g., State v. York*, 2022-Ohio-2457, ¶ 29 (finding that appellant possessed contraband contained in backpack even though there were no photos, driver's licenses, credit cards, or utility bills in the backpack indicating who owned it). And they recognize that where contraband is found in a vehicle driven by the defendant, the State need not prove that the defendant owned the vehicle. *See, e.g., State v. Bartee*, 2010-Ohio-5982, ¶ 11-12 (9th Dist.) (finding that appellant possessed firearm found in vehicle he was driving even though he was not the registered owner of the vehicle). As such, we reject Harris's argument that the State failed to present sufficient evidence because it did not establish that he owned the gun, diaper bag, or vehicle—it is not a required element of either offense.

{¶ 20} Concerning the accessibility of the firearm for purposes of R.C. 2923.16(B), there was evidence that the gun was accessible to Harris. It was in a bag that was within Harris's reach, and Harris, in fact, picked up the bag and moved it closer to him. This court is unaware of any authority supporting Harris's position that a gun is not "accessible" if it is in a bag that requires two hands to open. And courts have affirmed convictions for improper handling of firearms where the gun was found in a zipped bag. *See, e.g., State v. King,* 2011-Ohio-3417, ¶ 5 (2d Dist.) (firearm found in zipped case, on top of a bag directly behind driver's seat). In any event, there is no indication that it

8.

would have taken two hands to open the diaper bag. We find that the State's evidence of the location of the gun—in a bag within Harris's reach—was sufficient to support the "accessible" element of the offense of improper handling of a firearm in a motor vehicle.

{¶ 21} As to whether the State presented evidence that the firearm was in Harris's possession, the State may prove the "have" element of R.C. 2923.16(B) and R.C. 2923.13(A)(2) by showing that the defendant had either actual or constructive possession of the firearm. *State v. Brooks*, 2020-Ohio-6648, ¶ 12 (6th Dist.). "Actual possession requires ownership or physical control." *State v. Galindo*, 1999 WL 461749, *3 (6th Dist. July 9, 1999), citing *State v. Messer*, 107 Ohio App.3d 51, 56 (9th Dist. 1995). "Constructive possession" means "immediate access to the weapon." *State v. Butler*, 42 Ohio St.3d 174, 176 (1989). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery,* 46 Ohio St.2d 316, 329 (1976). While it is not enough to simply show that a firearm was located near the defendant, "it is a factor to be considered." *State v. Hill,* 2024-Ohio-2744, ¶ 29 (7th Dist.).

{¶ 22} Here, Harris was driving the vehicle and was its sole adult occupant. Moreover, regardless of whether the jury was convinced that Harris committed an aggravated robbery, there was testimony that Harris was seen with a handgun five days earlier, just before leaving his girlfriend's mother's house with the children in the same vehicle, and reached for the bag twice during his angry exchange with officers. This is sufficient evidence that Harris "had" the firearm. *See e.g., Bartee*, 2010-Ohio-5982, at ¶

9.

12 (9th Dist.) (finding constructive possession where defendant was driver of vehicle in which gun was found and had driven the vehicle on at least one other prior occasion).

{¶ 23} Finally, as to Harris's claim that the State failed to present evidence that he "knowingly" had the gun, for purposes of both R.C. 2923.16(B) and R.C. 2923.13(A)(2), "knowingly" is defined in R.C. 2901.22(B):

> A person acts knowingly regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 24} The Ohio Supreme Court has recognized that "[i]n many circumstances, proving knowledge beyond a reasonable doubt can be difficult." *State v. Jordan,* 2023-Ohio-3800, ¶ 26, citing *Flores-Figueroa v. United States*, 556 U.S. 646, 655 (2009). In fact, "[i]n some instances certain facts can only be established by circumstantial evidence." *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991), *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4. "Circumstantial evidence and direct evidence inherently possess the same probative value." *Id.* Accordingly, "the state can prove knowledge through either direct or circumstantial evidence," and the "jury may rely on circumstantial evidence to reasonably infer an offender's knowledge." (Citations omitted.) *Jordan* at *id.* Therefore, to the extent that Harris claims that the State was required to present direct evidence, he is wrong.

10.

{¶ 25} The State presented evidence that Harris confronted M.C. with a gun then got into a black Monte Carlo, Harris was pulled over five days later in the same black Monte Carlo, Harris reached for the diaper bag during a heated encounter with officers during which he threatened "we about to rumble," and a gun was found in the bag during a search of the vehicle. This evidence, though circumstantial, was sufficient to prove that Harris knew that there was a gun in the diaper bag. While it is true that Harris had his baby in his lap, the bag was a diaper bag, and Harris claimed to have reached for the diaper bag to obtain a baby bottle, these facts go to the weight of the evidence—not its sufficiency.

{¶ 26} The State presented evidence of the essential elements of both offenses. We find Harris's first assignment of error not well-taken.

### B. Manifest Weight of the Evidence

{¶ 27} Harris argues that his conviction was also against the weight of the evidence for essentially the same reasons that the evidence was insufficient. Additionally, he maintains that "there was no testimony as to who put what where when"—i.e., "there was no testimony as to who owned the diaper bag, how or when it was put in the car, how long [he] and the kids were in the car that day, and/or how frequently they were ever in the car, generally." He claims that there was no evidence that he put the gun in the diaper bag, that he knew it was there, or that he could access it.

{¶ 28} The State points out that Harris's second assignment of error addresses only his conviction for having weapons under disability. It submits that Harris's arguments fail for the same reasons as his first assignment of error. It also emphasizes

11.

that M.C. testified that Harris had a black handgun on July 9, 2023, and on July 14, 2023, Harris was the sole adult occupant of the vehicle, had the vehicle's keys, was the vehicle's driver, had dominion and control of all the contents of the vehicle, and tried to pick up the bag, dropping it only when ordered by the officers. The State maintains that how the gun got into the diaper bag is not essential to finding either actual or constructive possession.

{¶ 29} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 78 Ohio St.3d at 387. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 2012-Ohio-6068, ¶ 15 (6th Dist.), citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 30} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 2012-
12.

Ohio-616, ¶ 14 (6th Dist.). "The jurors are free to believe some, all, or none of each witness' testimony and they may separate the credible parts of the testimony from the incredible parts." *Hill*, 2024-Ohio-2744, at ¶ 24 (7th Dist.), citing *State v. Barnhart*, 2010-Ohio-3282, ¶ 42 (7th Dist.), citing *State v. Mastel*, 26 Ohio St.2d 170, 176 (1971). "When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we will not choose which one is more credible." *Id.,* citing *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist. 1999).

{¶ 31} Here, the jury was presented with two version of events: (1) that Harris knew that there was a gun in the diaper bag because he had a gun in his possession five days earlier, the gun was found in the diaper bag, and he reached for the diaper bag during a heated encounter with police; or (2) Harris reached into the diaper bag to retrieve a baby bottle, not knowing that there was a gun in the zippered pouch of the bag. The State did not have to prove that Harris put the gun in the bag, when he put it there, who owned the diaper bag, when the diaper bag was put in the car, how long Harris and the kids were in the car, or how frequently they were in the car—it just needed to prove that Harris knew the gun was there, and it was permitted to prove this with circumstantial evidence. We decline to find that the jury's verdict was against the manifest weight of the evidence simply because it chose to believe the State's version of events.

{¶ 32} We find Harris's second assignment of error not well-taken.

### III.  Conclusion

{¶ 33} The State was not required to present evidence that Harris owned the firearm, diaper bag, or vehicle, and it was permitted to prove the elements of the offenses

13.

with circumstantial evidence. It presented evidence that Harris knowingly had a firearm in the vehicle and the firearm was accessible to him. We find Harris's first assignment of error not well-taken.

{¶ 34} The jury was presented with conflicting views of the evidence, neither of which was unbelievable, and we will not second guess its decision concerning which version of the evidence was more credible. This is not the exceptional case in which the evidence weighs heavily against the conviction. We find Harris's second assignment of error not well-taken.

{¶ 35} We affirm the November 3, 2023 judgment of the Lucas County Court of Common Pleas. Harris is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.          _____

JUDGE

Myron C. Duhart, J.         

_____

Charles E. Sulek, P.J.          JUDGE
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.