[Cite as *State v. Neal*, 2024-Ohio-5735.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

Appellee

v.

Rodrick Neal

Appellant

Court of Appeals No.  L-24-1006

Trial Court No.  CR0202301804

**DECISION AND JUDGMENT**

Decided:  December 6, 2024

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**SULEK, J.**

{¶ 1} Appellant, Rodrick Neal, appeals the Lucas County Court of Common

Pleas' December 26, 2023 judgment which, following a jury trial convicting him of rape,

sentenced him to a minimum of 10 years of imprisonment.  For the reasons that follow,

the trial court's judgment is affirmed.

## I. Fact and Procedural History

{¶ 2} On May 20, 2023, at approximately 10:00 a.m., the victim, who lived in a multi-unit apartment, went to an upstairs neighbor, banged on the door, and told the neighbor that she had been raped. The neighbor opened the door and called 911. The victim was stumbling over her words and crying.

{¶ 3} When law enforcement arrived on the scene, they encountered the victim and her neighbor inside a common area between the upper and lower apartments. The officers entered the victim's apartment, found Neal in the bedroom naked and incoherent, and removed him by force. The officers agreed that there were no signs of forced entry at either the front or back door of the apartment. They saw a small broken kitchen window with shards of glass still in the pane. The officers did not see any cuts or scrapes on Neal.

{¶ 4} On May 30, 2023, the Lucas County Grand Jury indicted Neal on one count each of aggravated burglary, R.C. 2911.11(A)(1), and rape, R.C. 2907.02(A)(2). Neal pleaded not guilty to the charges.

{¶ 5} The case proceeded to trial on December 11, 2023. Prior to the start of trial that day, however, Neal filed a motion in limine seeking to prohibit the State's use of the police body worn camera (BWC) recording of the victim in the EMS vehicle, portions of the SANE nurse report, and the 911 call made by the victim's neighbor. He argued that the testimonial nature of the evidence at issue combined with the fact that the victim was likely unavailable for trial violated Neal's constitutional right to confront his accuser.

2.

{¶ 6} Prior to jury selection, the parties addressed Neal's motion in limine. The parties agreed that the State would submit a redacted recording of the victim's EMS interview. Neal's counsel then claimed that the BWC video depicting a discussion between the neighbor and Toledo Police Lt. Kelli Russell, was inadmissible hearsay because of the testimonial nature of the neighbor's response to police questioning. The State asserted that the conversation was in response to an ongoing emergency. The parties agreed to the admissibility of the recording up to the 45-second mark. The trial court took the admissibility of the balance of the recording under advisement.

{¶ 7} The parties next discussed the admissibility of the neighbor's 911 call. Neal argued that the call was inadmissible hearsay and did not meet the excited utterance exception because the neighbor did not personally observe the matters she relayed on the call. He agreed that the neighbor observed the victim, but stated that because she had not observed the incident relating to her statements it removed the call from the exception. After reviewing the 911 call, the trial court determined that it was admissible under Evid.R. 803.

{¶ 8} Finally, the parties addressed the SANE report. Neal acknowledged that portions of the report directly relating to medical diagnosis and treatment were admissible. He maintained, however, that the portions of the report detailing statements made by the victim were inadmissible hearsay because the victim was not available to cross-examine. The trial court concluded that the report was admissible under multiple Evid.R. 803 exceptions. The trial then commenced.

3.

{¶ 9} Toledo Police Lieutenant Philip Cook testified that as a records custodian, he makes copies of 911 calls upon request of the prosecutor's office. Cook stated that he made a copy of the call placed by the neighbor. The call was then played for the jury. In the recording, the neighbor states that the victim came to her apartment and said she had been raped. The 911 operator asks a series of questions that the neighbor poses to the victim who was still in her apartment. The neighbor relayed the responses to the operator.

{¶ 10} Toledo Police Officers Keith Zaborowski and his partner, Gregory Smith, responded to the 911 call. The officers similarly testified that when they arrived on the scene, they encountered two females inside the common area between the upper and lower apartments. The upstairs neighbor spoke first while the victim appeared distraught and in shock.

{¶ 11} The officers entered the victim's apartment and found Neal in the bedroom naked, incoherent, and combative. It took 30 to 45 minutes, and 6 to 8 officers, to remove him from the apartment. Neal was transported to the hospital, cleared medically, and then booked into the county jail. The State then played the agreed-upon, redacted version of Zaborowski's BWC recording depicting their initial encounter with Neal.

{¶ 12} The officers agreed that there were no signs of forced entry at either the front or back doors. They saw a small broken kitchen window with shards of glass still in the pane. The officers did not see any cuts or scrapes on Neal.

4.

{¶ 13} The neighbor, who lived in an apartment directly above the victim's, stated that she and the victim "clashed" because of the victim's lifestyle. She testified that on May 20, 2023, at approximately 10:00 a.m., the victim "banged" on her door stating that she had been raped. Despite the tension between the two, the neighbor opened the door and called 911. She stated that the victim was stumbling over her words and crying. The neighbor acknowledged that on the date of the alleged rape, the victim had been evicted from her apartment and moved out shortly after.

{¶ 14} Following the neighbor's testimony, the trial court admitted the 911 tape under Evid.R. 803(1), present sense impression, based on her observation of the victim. The court further found that as to the victim, hearsay exceptions under Evid.R. 803(2) (excited utterance), Evid.R. 803(3) (then existing condition), and Evid.R. 803(4) (statements made for purposes of medical diagnosis or treatment) applied.

{¶ 15} Off the record, the parties revisited the admissibility of Lieutenant Kelli Russell's BWC recording and whether to admit the full video. The court determined that footage was duplicative of the neighbor's testimony and limited it to the first 45 seconds.

{¶ 16} Lieutenant Russell then testified that she assisted officers on scene the day of the incident. On her way into the apartment, she passed by the victim crying and very shaken up. She then located Officers Zoborowski and Smith in the bedroom trying to restrain Neal. The State played the 45 second video clip from her BWC.

{¶ 17} Toledo Police Officer Angela Domschot testified that on May 20, 2023, she and Officer Walker were called to the victim's apartment at 10:15 a.m. Domschot spoke

5.

with the victim inside the ambulance. She was distraught, had labored breathing, and was crying. Domschot observed red marks around her neck. She complained of abdominal pain. The redacted version of Domschot's BMC recording was played for jury.

{¶ 18} Toledo Fire and Rescue Lieutenant Robert Reed testified that on May 20, 2023, he and his partner responded by ambulance to a reported rape. On arrival, Reed observed the victim crying, very upset, and near "hysterics." The victim complained of being sexually assaulted and having abdominal and groin pain. She had no visible injuries. Reed explained that EMS generates a patient care record documenting medical treatment which also aids in continuity of care at the hospital. The record was admitted into evidence.

{¶ 19} Prior to the sexual assault nurse examiners' (SANE) testimony, Neal renewed his objection to the admissibility of "testimonial statements" in the SANE report. The trial court overruled the objection finding that the testimony and report were admissible under Evid.R. 803(4) because they related to medical diagnosis and treatment.

{¶ 20} Two SANE nurses treated the victim. SANE nurse, R.H., testified that there is a narrative and physical component to a rape exam. In the narrative portion of the exam, the victim relays the details of the assault. The physical part includes performing a rape kit, where evidence is collected through swabs and photographs and, if female, a vaginal examination. A report is then generated. SANE nurse, R.H., authored the report relating to the victim; it was admitted into evidence.

6.

{¶ 21} Reviewing her report, the SANE nurse testified that when she first encountered the victim, she was angry and withdrawn. The SANE nurse then effectively read the narrative portion of the report into evidence. She testified that the victim told her that the evening prior to the assault she was at her friend's house, they had a disagreement, and she walked all night to get home. The victim realized that she locked herself out of the apartment; she used her knife to gain entry. She immediately left to go to a carry-out for cigarettes, coffee, and snacks. Returning, she noticed her broken kitchen window but said she had to go in to check on her dogs.

{¶ 22} The victim told the SANE nurse that she found Neal in her bedroom. Neal was barefoot and asked her if she had shoes and clothes for him. She described him as African American with big eyes, short hair, and a round abdomen. The victim stated that she bent down to pet her dogs and Neal pushed her over the side of the bed, briefly choked her, held a hand on the back of her head and back, and penetrated her vagina and anus with his penis.

{¶ 23} The SANE nurse testified that due to the victim's abdominal pain complaint, the physical exam, including the vaginal exam, was performed earlier in the emergency room by a different SANE nurse. Pieces of tissue were removed from her vagina.

{¶ 24} The initial SANE nurse, C.A., testified that she was working in the emergency room when the victim arrived. The victim had a CT scan to determine the source of her abdominal pain. The SANE nurse testified that the scan showed something

7.

"concerning" in the victim's vagina so the treating physician decided to conduct a vaginal exam. She simultaneously conducted the physical portion of the rape exam. The SANE nurse collected vaginal and oral swab samples and samples from underneath the victim's fingernails.

{¶ 25} Ohio Bureau of Criminal Investigation (BCI) forensic scientist Lindsey Deetz testified that she examines items of evidence for the presence of bodily fluids then conducts a DNA analysis comparing the DNA found on the evidence with the known DNA standards submitted by police. Deetz testified that she received a rape kit containing swabs from the victim and a DNA standard from Neal. Detz testified that the quick, or presumptive test on the victim's vaginal swabs showed the presence of semen; the DNA analysis revealed two contributors— Neal and the victim. She stated that statistically, the estimated frequency of the DNA profile is rarer than one in one trillion. Deetz's report was admitted into evidence.

{¶ 26} The state's final witness, Toledo Police Detective Nathan Kaczmarek, testified that he is assigned to the Special Victims Unit which investigates sexual assaults. He met with the victim at the hospital and stated that she appeared disheveled and distraught and showed signs of trauma. Kaczmarek testified that adult sexual assault victims are not immediately interviewed because the trauma can impact memory. He stated that a victim is typically interviewed a few days after the assault at the police station in a "soft room," or private room intended to comfort victims.

8.

{¶ 27} On May 25, 2023, Kaczmarek picked up the victim and interviewed her in the soft room at the police station. He stated that this interview was the last time he spoke with the victim. Her phone number was not valid and she no longer lived in the apartment. Kaczmarek searched for and did not locate any subsequent contacts with police or vehicle records. Two subpoenas were unsuccessfully served. Kaczmarek acknowledged that sexual assault victims commonly fail to cooperate in prosecuting the assailant.

{¶ 28} On cross-examination, Kaczmarek explained the Douglas Road address listed on the subpoenas was taken from the victim's statement that the night before the incident she was at her friend's house at Douglas Arms Apartments. He admitted that police never went to the Douglas Road address to try and locate the victim.

{¶ 29} At the close of evidence, Neal's counsel moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion. The jury convicted Neal of rape and acquitted him of aggravated burglary. This appeal followed sentencing.

## II. Assignments of Error

{¶ 30} Neal raises three assignments of error:

I. The trial court committed plain error by allowing hearsay evidence to be admitted pursuant to an exception to the general rule against hearsay, to wit: Evid.R. 803(1), (2), (3), and (4), when the complaining witness did not appear for trial, arguably without evidence that the state used reasonable means to procure her attendance, thereby arguably preventing appellant from confronting his accuser.
II. The trial court abused its discretion by denying appellant's motion for acquittal on the basis of insufficient evidence, pursuant to Crim.R. 29.

9.

III. In the alternative, the conviction here was against the manifest weight of the evidence.

## III. Analysis

### A. Admissibility of the Victim's Statements

{¶ 31} Neal's first assignment of error claims that the trial court committed reversible error by allowing the victim's statements to be admitted at trial without first demonstrating her unavailability. The State counters that the victim's unavailability was immaterial because her statements were admissible under Evid.R. 803.

{¶ 32} Because Neal failed to raise this issue in the trial court, he has forfeited all but plain error on appeal. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain error will be recognized only where, but for the error, the outcome of the case would clearly have been different." *State v. Vasquez*, 2024-Ohio-2496, ¶ 25 (6th Dist.), citing *State v. Roby*, 2022-Ohio-223, ¶ 19 (6th Dist.). "'Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Nicholson*, 2024-Ohio-604, ¶ 114, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 33} Here, the trial court admitted the 911 call and statements made to police and medical personnel under Evid.R. 803, which relevantly provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

10.

(1) Present Sense Impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.

(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

(3) Then Existing, Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

{¶ 34} Relying on *State v. Harvey*, 2022-Ohio-4650 (6th Dist.), Neal asserts that the trial court should have excluded the statements because the State failed to make reasonable efforts to ensure that the victim appeared at trial.

{¶ 35} In *Harvey*, the victim recanted her statement prior to trial and the State requested that she be called as a court witness. *Id.* at ¶ 4. Unable to serve the victim by subpoena and after she did not appear at trial, the State filed a motion under Evid.R. 804(B)(6), forfeiture by wrongdoing, requesting that her initial statements to police be admitted because of the thousands of telephone calls and e-mails between the victim and jailed defendant despite a no contact order. *Id.* at ¶ 13. Looking at the totality of the circumstances, the trial court granted the motion. *Id.* at ¶ 16.

11.

**{¶ 36}** On appeal, this court found that the State's failure to demonstrate the victim's unavailability by showing that it took the necessary steps to ensure the victim's presence at trial, prevented the application of Evid.R. 804. The court noted the State's failure to reach out to any of the victim's family members including her mother, whose address was listed on several of the medical documents, and a sister who lived minutes away and where the victim's children were dropped off following the incident. *Id.* at ¶ 49.

**{¶ 37}** Critically distinct from *Harvey*, in this case the victim's statements were admitted under Evid.R. 803 which, unlike Evid.R. 804, does not require a showing of unavailability. *State v. Delong*, 2022-Ohio-4233, ¶ 16 (3d Dist.), citing *State v. Dever*, 64 Ohio St.3d 401, 414 (1992). The Confrontation Clause is automatically satisfied when hearsay evidence is presented under Evid.R. 803, and therefore the issue of the declarant's availability is irrelevant. *See State v. Johnson*, 2006-Ohio-1232, ¶ 30 (6th Dist.); *see also Columbus v. C.G.*, 2021-Ohio-71, ¶ 52 (10th Dist.).

**{¶ 38}** In this case, Neal challenges the trial court's admission of statements under Evid.R. 803, arguing the State failed to make reasonable efforts to secure the victim's attendance at trial. As set forth above, however, because the trial court admitted the statements under Evid.R. 803, not 804, the issue of the victim's availability at trial is irrelevant. Nonetheless, it is worth noting that, as the trial court found, such statements are generally considered nontestimonial or made for neither investigative nor prosecutorial purposes. *See State v. Santellana*, 2020-Ohio-5041, ¶ 25 (6th Dist.) (A 911

12.

call is generally admissible under the exited utterance or present sense impression exceptions to explain the course of the police investigation.); *State v. Sproles*, 2023-Ohio-3403, ¶ 30 (6th Dist.) (Statements made to police while victim was under the stress of an ongoing emergency were nontestimonial excited utterances.); *State v. Reynolds*, 2018-Ohio-40, ¶ 52 (6th Dist.), citing *State v. Ridley*, 2013-Ohio-1268, ¶ 49 (6th Dist.) (A description of the injuring event and identification of the perpetrator to medical personnel may fall within the medical diagnosis and treatment exception.)

{¶ 39} Additionally, the State made multiple attempts to locate the victim prior to trial including calling her cell phone, driving by her apartment and speaking with her former landlord, sending two subpoenas to her friend's house, and checking various police and information databases. Unlike *Harvey*, the victim did not have familial ties to the area. Accordingly, Neal has not demonstrated plain error in the admission of the victim's statements under Evid.R. 803. Based on the foregoing, Neal's first assignment of error is not well-taken.

## B. Sufficiency and Manifest Weight of the Evidence

{¶ 40} In Neal's second assignment of error, he contends that the trial court erred by denying his Crim.R. 29 motion for acquittal. "The denial of a motion for acquittal under Crim.R. 29(A) 'is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" *State v. Haynes*, 2020-Ohio-1049, ¶ 24 (6th Dist.), quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37. In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence

13.

in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *Sproles*, 2023-Ohio-3403, at ¶ 33. In making this determination, appellate courts do not weigh the evidence or assess the credibility of witnesses. *State v. Harris*, 2024-Ohio-4722, ¶ 15 (6th Dist.), citing *State v. Walker*, 55 Ohio St.2d 208, 212 (1978).

**{¶ 41}** Neal was convicted of rape, R.C. 2907.02(A)(2) and (B), which prohibits an individual from engaging in "sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Neal agrees that he engaged in sexual conduct with the victim but contends that it was consensual, not a result of force or threat of force.

**{¶ 42}** Conversely, the State points to evidence presented during trial that Neal bent the victim over her bed, held her down with one hand on her head and the other on her back, and put his penis in her vagina. The victim also complained that Neal briefly choked her.

**{¶ 43}** Reviewing the evidence most favorably for the prosecution, the evidence is sufficient to support Neal's conviction. The State presented evidence that the victim appeared extremely upset and traumatized, and consistently reported to her neighbor, police and medical personnel that she had been raped. She also stated that she was physically restrained during the rape. Neal's second assignment of error is not well-taken.

14.

**{¶ 44}** In his third assignment of error, Neal maintains that his rape conviction is against the manifest weight of the evidence. When reviewing a manifest weight claim,

> "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*State v. Fenderson*, 2022-Ohio-1973, ¶ 73 (6th Dist.), quoting *State v. Lang*, 2011-Ohio-4215, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶ 45}** Neal's manifest weight argument relies on his contention that the rape allegation relies on inadmissible hearsay because the State did not make a good faith effort to secure the victim's presence at trial. He argues that absent such evidence, the conviction was not supported by the weight of the evidence. We previously rejected this argument.

**{¶ 46}** On review, the jury's verdict aligned with the evidence presented at trial. Multiple witnesses testified regarding the victim's demeanor and the accounts of the incident were consistent. Accordingly, the jury's decision to believe the State's evidence did not create a miscarriage of justice in this case. Neal's third assignment of error is not well-taken.

15.

## IV. Conclusion

{¶ 47} Based on the forgoing, the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, Neal is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

_____

Charles E. Sulek, P.J.                 JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.