**[Cite as *State v. Sampson*, 2025-Ohio-404.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo                          Court of Appeals No.    L-24-1062

      Appellee

                                    Trial Court No.  CRB2311432

v.

Leo Sampson
                                  **DECISION AND JUDGMENT**

      Appellant
                                  Decided:  February 7, 2025

* * * * *

Rebecca Facey, Toledo Prosecuting Attorney, and
Jimmie L. Jones, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant, Leo Sampson

      **SULEK, J.**

      **{¶ 1}** Appellant, Leo Sampson, appeals the Toledo Municipal Court's March 4, 2024 judgment sentencing him to one year of probation following domestic violence and assault convictions.  Because the trial court's judgment is supported by sufficient evidence and is not against the weight of the evidence, it is affirmed.

## I. Facts and Procedural History

{¶ 2} On November 28, 2023, Toledo Police filed two sworn complaints charging Sampson with one count each of domestic violence and assault. The complaints alleged that on November 27, 2023, Sampson, live-in boyfriend and father of the victim's children, assaulted her by "slamming a door against her back, causing scratches/abrasions and then holding her by the back of the neck and throwing her to the ground, causing injury to her middle right finger."

{¶ 3} During a bench trial, Toledo Police Officer Kirk Haeuptle testified that on November 27, 2023, at approximately 10:45 p.m., he responded to a domestic violence call at a residence on Lagrange Street in Toledo, Lucas County, Ohio. Officer Haeuptle identified State's exhibit A containing the incident-detail report, the 911 call recording, and a signed certificate authenticating the 911 recording. The court admitted the exhibit without objection. The State then played the 911 call.

{¶ 4} On the recording, the victim is noticeably upset and sounds like she is crying; she asks the 911 operator to stay on the line with her. The victim states that Sampson hurt her, that he broke her finger, and that he threw her to the ground in front of her children. Requesting that the police find Sampson first, she gave the operator his vehicle's make, model and license plate number.

{¶ 5} Officer Haeuptle testified that he and his partner, Officer David McCormick, first encountered the victim at the back door of the residence. The victim was visibly upset and remained so for the 30 minutes they were on scene. Haeuptle observed some abrasions on the victim's back.

2.

{¶ 6} Officer McCormick testified that he had a body worn camera (BWC) on and recording during the incident. He stated that the victim appeared distraught, was crying and "very frantic" regarding the situation. The State then presented State's exhibit B, McCormick's 40-minute BWC recording. The State indicated its intention "to play from approximately a minute forty for roughly thirty to sixty seconds. And then from approximately seven and a half minutes to eight and a half minutes . . ." The State clarified that the first clip depicts the "[victim's] demeanor and state of mind upon arrival for officers." In the second clip, the victim is speaking with EMS personnel regarding her injuries.

{¶ 7} Sampson objected to the first clip arguing that it was inadmissible hearsay. Counsel stated that the victim would be testifying and that the clip was duplicative. The State countered that it was not offering the video for its truth rather, to demonstrate the victim's demeanor. The court found that the victim was still under the influence of the event and admitted the clip under either present sense impression or exited utterance. Sampson then objected to the second clip; the court found it admissible.

{¶ 8} McCormick testified that he photographed the abrasions on the victim's back. He acknowledged that in the second video clip, EMS tells the victim that her back looks okay.

{¶ 9} A second police unit located Sampson across the street from his residence sleeping in his parked vehicle and returned him to the residence. Police arrested Sampson on domestic violence and assault charges and transported him to the Lucas County Jail.

3.

{¶ 10} The victim testified as a court witness. She testified that on the date of the incident, she and Sampson lived together and were in a relationship. They also have two children together. The victim testified that on November 27, 2023, she called 911 intoxicated and lied about Sampson breaking her finger. She testified that she had previously jammed, not broken, her finger and it could have been caused by one of her children or while working around the house.

{¶ 11} The victim testified that she had a lot to drink and was "trying to argue with him, trying to start something." She claimed that she was the aggressor and physically attacked Sampson. The victim agreed that she removed herself from the altercation by going to her bedroom but denied that Sampson repeatedly hit her with the bedroom door. Reviewing the photograph of her back abrasions, the victim insisted that if Sampson had hit her with the bedroom door the marks would have been vertical, not horizontal.

{¶ 12} The victim testified that Sampson eventually left and was later found sleeping in his car. The victim admitted lying on the 911 call; she stated that she was angry that Sampson left the residence.

{¶ 13} The victim denied receiving threats to either appear or not appear for trial. She testified that she and Sampson discussed the matter and both initially agreed that she would not appear. She denied Sampson telling her that she needed to make the charges go away. The State then rested its case.

{¶ 14} Sampson moved for acquittal under Crim.R. 29. He claimed that that the the testimony was "all over the place" and that the State failed to make a prima facie showing of the elements. The State asserted there was sufficient evidence on all the

4.

elements based upon the testimony of the officers, the 911 recording, and the BWC video. The court denied the motion.

{¶ 15} Sampson testified that on November 27, 2023, he and the victim were moving into the residence with their two children. That night, they had been drinking and things "were escalating" after the victim saw a text message on his phone from a female. She began to get "crazy" and tried to assault him by grabbing at his shirt and neck. As he sat up, he "rolled" her off of him. She took his cell phone to the bedroom. Sampson denied having any physical contact with the victim. He admitted that he may have hit the victim with the bedroom door because when he opened the door, he was unaware that she sat behind the door. He observed her crying, he retreated and left the residence.

{¶ 16} Sampson renewed his Crim.R. 29 motion; the court denied it. The court then found Sampson guilty of domestic violence and assault. Rendering the verdict, the court stated:

> [W]hat happened differs from whether we believe the footage and the testimony of the officers that were there on the, 27th, or that we believe the testimony of the victim and the defendant here in court today, which is under oath. Great weight is to be given to testimony under oath. You are under oath, and you face perjury charges. So I do give that testimony great weight. I also have to balance it with reasonableness, okay? And what I'm seeing in the video, what I'm hearing in the 911 call, what I'm hearing from officers who responded . . .
> [The] statements that you make, very close to the incidents, are admissible. The reason excited utterances are admissible. The reason 911 calls are admissible is you don't have time to make something up. Usually these things are happening very realtime or close approximately to realtime. No time to fabricate or think about what the consequences would be. It's just coming out of you, raw, accurately, unfiltered. The 911 call is very telling to The Court. You can't fake that. That's not acting. And you were

5.

hysterical. You were sobbing. You were to the point that I couldn't even understand a lot of your words. You were absolutely hysterical and distraught. . . . So I do find that the State has met its burden of proof, beyond a reasonable doubt, as to both counts.

{¶ 17} The court merged the convictions and immediately sentenced Sampson to a suspended jail sentence of 180 days and one year of active probation for domestic violence. This appeal followed.

## II. Assignments of Error

I. The trial court erred to the prejudice of appellant by denying the defense motion for acquittal pursuant to Crim.R. 29.

II. Appellant's convictions were not supported by the manifest weight of the evidence.

## III. Analysis

{¶ 18} In Sampson's first assignment of error, he contends that the trial court erred in denying his Crim.R. 29 motion for acquittal. "The denial of a motion for acquittal under Crim.R. 29(A) 'is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" *State v. Haynes*, 2020-Ohio-1049, ¶ 24 (6th Dist.), quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In making this determination, appellate courts do not weigh the evidence or assess the credibility of witnesses. *State v. Harris*, 2024-Ohio-4722, ¶ 15 (6th Dist.), citing *State v. Walker*, 55 Ohio St.2d 208, 212 (1978).

6.

{¶ 19} Sampson was convicted of domestic violence, R.C. 2919.25(A), which prohibits a person from knowingly causing or attempting to cause physical harm to a family or household member. The offense of assault, R.C. 2903.13(A), similarly prohibits an individual from knowingly causing or attempting to cause harm to another.

{¶ 20} Reviewing the evidence in the State's favor, the evidence is sufficient to support Sampson's convictions. The State presented testimony that the parties lived and had children together. In the 911 recording, the victim states that Sampson broke her finger and threw her to the ground. The victim had abrasions on her back which she stated were caused by Sampson hitting her with the bedroom door. Sampson's first assignment of error is not well-taken.

{¶ 21} In his second assignment of error, Sampson asserts that his convictions were against the manifest weight of the evidence. When reviewing a manifest weight claim, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Lang*, 2011-Ohio-4215, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Thompkins* at 387.

{¶ 22} Sampson's manifest weight argument relies on his contention that because there was no corroborative testimony and the victim testified, under oath, that she was the

7.

aggressor, the verdict was against the weight of the evidence. The court heard all the evidence presented at trial and chose to believe the victim's statements on the date of the incident rather than her trial testimony. The court carefully explained its reasoning for doing so. On review, the court's decision to believe the State's evidence did not create a manifest injustice in this case. Sampson's second assignment of error is not well-taken.

## IV. Conclusion

{¶ 23} Based on the foregoing, the judgment of the Toledo Municipal Court is affirmed. Pursuant to App.R. 24, Sampson is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J. _____

_____
                                                                  JUDGE
Gene A. Zmuda, J. _____

_____
Charles E. Sulek, P.J. _____                      JUDGE
CONCUR.

_____
                                                                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.